**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

UNIVERSITY MALL, LLC                                              **PLAINTIFF**

V.                                         **CIVIL ACTION NO. 2:24-CV-91-KS-MTP**

IKECHUKWU OKORIE, ROYAL
OAKS RENTAL PROPERTIES,
LLC, AND INLAND FAMILY                              **DEFENDANTS**
PRACTICE, LLC

## ORDER

Before the Court are several fully-briefed motions.  Plaintiff University Mall, LLC

("University Mall") has filed a Motion for Contempt [240] and an Emergency Motion for Pre-

filing Injunction and Other Relief [258]. The Court held hearings on the motions on August 26 and

27, 2025.  Defendant Okechukwu Okorie has also filed a Motion to Correct Minute Entry and

Supplement Record [275].  Having considered all related filings, including the testimony and

evidence presented at the hearings, the Court grants the Motion for Contempt [240] and the Motion

for Pre-filing Injunction [258].  The Motion to Correct Minute Entry [275] is granted in part and

denied in all other respects.[1]

## I.      BACKGROUND

When boiled down to their essence, the facts of this case are relatively simple: Defendant

Okorie and his Defendant companies had a building located at 3700 Hardy Street, Hattiesburg,

Mississippi ("3700 Hardy Street") that went into foreclosure.  The building also housed

Defendants' medical clinics, Inland Family Practice, LLC, and St. Michael's Urgent Care

---

[1] As the transcript of the hearings demonstrates, the Court gave Defendant Okorie considerable leeway in his testimony.  *See* Trs. [278], [279], [280].  Defendant's Motion [275] is granted only to the extent that the Court has considered Defendant Okorie's exhibits referenced in the Motion [275].  In all other respects, the Motion is denied.

(collectively, "Inland Family"). Plaintiff University Mall bought 3700 Hardy Street at a foreclosure auction on March 28, 2024. However, at this point the story veers off the rails and becomes much more complicated. Instead of working to reach a lease agreement with Plaintiff University Mall – the new owner of 3700 Hardy Street – Defendant Okorie disputed[2] University Mall's ownership of the building, he and Inland Family refused to vacate the building, and they refused to pay any rent. In an effort to evict Defendants, Plaintiff brought an action in state court for Unlawful Entry and Detainer pursuant to Miss. Code Ann. § 11-25-101, *et seq*., that Defendant Okorie removed to this forum. After a hearing on Plaintiff's complaint, the Court ruled in favor of Plaintiff University Mall and awarded possession, costs, and back rent of $76,440.08 (calculated at the rate of $9,800.00 per month) to Plaintiff on November 21, 2024.[3] *See* Order [148]; J. [149]; Abstract of J. [203]. Despite the Court's ruling, Defendants refused to budge. Defendants' failures to heed this and subsequent orders issued by the Court form the genesis of the contempt proceedings.

Pursuant to the state statute, the Court's November 21 Order [148] included a contempt warning, which stated that the "Court advises Defendants that the 'judge may . . . enforce the judgment and may punish for contempt of process thereon.'" Order [148] at 16 (quoting Miss.

---

[2] A partial list of cases in which Defendant Okorie has disputed the ownership of 3700 Hardy Street may be found in Order [85], *Okorie v. Foxworth, et al.*, Civil Action No. 2:24cv35-TBM-RPM (S.D. Miss. June 4, 2025). At the time of the Order [85], Defendant Okorie had filed over thirty (30) lawsuits and bankruptcy appeals before the United States District Court for the Southern District of Mississippi. The list in Order [85] does not include Okorie's state court actions related to this property. *See Okorie v. University Mall*, 2025-CP-192-COA (still pending as of 10/17/25); *Okorie v. Citizen's Bank*, No. 2024-CP-166 (Miss. Aug. 1, 2024)(affirming the Forrest County Chancery Court's grant of summary judgment in favor of Citizens Bank and Wells Fargo Bank and dismissal of Okorie's claim to quiet and confirm title regarding 3700 Hardy Street); *Okorie v. Citizens Bank*, 2024-CP-462-COA (Miss. Ct. App. Apr. 16, 2024)(affirming the Forrest County Chancery Court's dismissal of Okorie's complaint to quiet title regarding 3700 Hardy Street). The Court notes that this account of state actions is based on a review of the docket at the Mississippi Supreme Court and the Mississippi Court of Appeals, and it does not include actions, if any, that are currently pending in the lower state courts that relate to 3700 Hardy Street. A history of Defendant Okorie's bankruptcy litigation may be found at *In re Okorie*, No. 19-50379-KMS, 2023 WL 7311173, *3 (Bankr. S.D. Miss. Nov. 6, 2023)(setting forth detailed facts and history of the case), *aff'd*, No. 24-60255, 2024 WL 4471734 (5th Cir. Oct. 11, 2024).

[3] On July 30, 2025, the Fifth Circuit affirmed the Court's November 21, 2024, Order [148] and Judgment [149]. *See* Order [276](Appeal No. 24-60605). The mandate issued on September 4, 2025.

Code Ann. § 11-25-113).  On December 2, 2024, the Court, again pursuant to the state statute, issued a Writ of *Habere Facias Possessionem* directing the United States Marshal to deliver "peaceful possession" of 3700 Hardy Street to Plaintiff.  *See* Writ [163].  In response to Defendant Okorie's Motions for Clarification [152] and [154], the Court explained the meaning of contempt and reiterated that University Mall was entitled to possession of 3700 Hardy Street in an Order entered on December 3, 2024.  *See* Order [168].  Defendants still refused to vacate the premises and, in the meantime, had appealed the Court's Order [148] without posting a supersedeas bond.[4] *See* Notice of Appeal [150].  On December 4, 2024, the Fifth Circuit Court of Appeals issued two separate orders denying Defendant Okorie's motions to stay eviction.  *See* Orders [169], [170] (both in Appeal No. 24-60605).  In a third order entered on December 4, the Fifth Circuit denied Defendant Okorie's motion for emergency injunction pending a ruling on his petition for mandamus (seeking to stop this Court's proceedings) and issued a sanctions warning stating, "[w]e CAUTION Petitioner [Okorie] that the future filing of repetitive or frivolous motions in this court may result in the imposition of sanctions, including dismissal, monetary sanctions, and restrictions on his ability to file pleadings in this court and any court subject to this court's jurisdiction."  Order [172] at 1-2 (Appeal No. 24-60613).

That same day, December 4, 2024, this Court issued the first of several orders giving Defendants until December 18, 2024, to vacate the building and remove its contents.  *See* Orders [171] (entered 12/4/24), [175] (entered 12/6/24; denying stay); [181] (entered 12/13/24); [184] (entered 12/17/24).  Each Order reiterated the December 18 deadline for vacatur of 3700 Hardy Street.  The Orders at [171] and [181] included, yet again, contempt warnings.  And the December 17 Order emphasized that "[p]ursuant to Mississippi Code Annotated § 89-7-35(4), any personal

---

[4] Defendants did, however, eventually make two rental payments in the amount of $1,633.35 (from Okorie) and $2,286.69 (from Inland Family) pursuant to the Court's Order [171].  *See* Docket entries of 12/6/24 and 12/13/24.

property left by Defendants on the premises of 3700 Hardy Street 'shall be deemed abandoned and may be disposed of by' Plaintiff University Mall 'without further notice or obligation' to Defendants, *subject to the rights or interests, if any, of a Chapter 7 Trustee in either bankruptcies of Defendant Inland Family or Defendant Okorie*."  [184] at 2 (emphasis in original).

In the meantime, on December 9, 2024, the Fifth Circuit issued an order denying Defendant Okorie's renewed emergency motion for stay of execution of eviction proceedings.  *See* Order [176](Appeal No. 24-60605).  In the Order, the Fifth Circuit gave Defendant Okorie another sanctions warning, stating, "we again WARN Appellant [Okorie] that further meritless efforts to stay the district court's judgment by future frivolous filings in this court may result in the imposition of sanctions, including dismissal, monetary sanctions, and restrictions on his ability to file pleadings in this court and any court subject to this court's jurisdiction."  *Id.* at 2.  The following day, the same Fifth Circuit panel issued an Order denying Defendant Okorie's motion for clarification in his mandamus action.  *See* Order [177] (entered 12/10/24; Appeal No. 24-60613).

Early on the morning of December 18, 2024, officers of the United States Marshal Service secured the building for Plaintiff.  *See* Return [185].  According to subsequent filings by Plaintiff and testimony at the contempt hearing, 3700 Hardy Street appeared on that day as if Inland Family employees had simply walked out of the building at the close of business on December 17, leaving behind all of the building's contents, including computers, medical records, medical equipment, toxic medical waste, and Defendant Okorie's personal property.[5]  <u>In other words, Defendant</u>

---

[5] With permission of the Bankruptcy Court and Trustee, on January 15, 2025, University Mall paid $4,966.41 to a moving company to dispose of medical waste, pack up and secure personal property, medical records, and contents of 3700 Hardy Street.  All of the packed items were moved to a secure storage trailer, for which University Mall has continued to pay monthly rental.  *See* [271-1].

<u>Okorie made no effort whatsoever to comply with the Court's orders to vacate the premises by</u>
<u>December 18, 2024.</u>

On December 20, 2024, Defendant Okorie filed a Notice to the Court [186] advising that Inland Family Practice's Chapter 11 bankruptcy had been converted to a Chapter 7 bankruptcy on December 17.  *See* Notice [184]; *see also* Bankr. Order [186-1].  Thereafter, the Bankruptcy Court held a hearing on the matter on January 7, 2025, and it subsequently entered a Final Decree/Order Closing Case on March 19, 2025.  *See* Order [469], *In re Inland Family Practice Center, LLC*, No. 19-50020-KMS (Bankr. S. D. Miss. Mar. 19, 2025).

Since the Court entered its Order [148] in November 2024, the case has dragged through post-judgment proceedings due, in no small part, to Defendant Okorie's efforts.  At this juncture, the Court will not give a blow-by-blow account of this case's post-judgment procedural history. The nearly one hundred fifty docket entries since November 2024 speak for themselves.  However, along the way, the case has spawned Plaintiff's Motion for Contempt [240], which Plaintiff brought after Defendant Okorie failed to vacate the premises pursuant to the Court's Orders and after the Bankruptcy Court dismissed Inland Family's bankruptcy.  Plaintiff has also filed a Motion for Pre-filing Injunction [258].  This motion was prompted by Okorie's threatened lawsuit against Plaintiff, Plaintiff's Texas and Mississippi counsel, and their respective law firms that Okorie subsequently filed on July 29, 2025, when Plaintiff sought to garnish Okorie's Texas bank accounts.  *See Okorie v. University Mall, LLC, et al.*, Civil Action No. 4:25-cv-817-SDJ-AGD (E.D. Tex.)(dismissed on 8/25/25).  The Court has held hearings on the Motions [240] and [258], and it is now ready to rule.

II.    MOTION FOR CONTEMPT

Considering this procedural background, the Court turns to the Motion for Contempt [240]. Plaintiff University Mall has moved for civil contempt against Defendant Okorie personally because he has claimed to be the owner of the building and the landlord of the companies that operated there. He also sought relief in his personal capacity regarding the contents of the building. *See* Motion [234].

The civil contempt analysis is relatively simple. To prove civil contempt, the movant must demonstrate "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order. To determine compliance with an order, the court simply asks whether the respondent" did what the order required. *FDIC v. LeGrand,* 43 F.3d 163, 170 (5th Cir. 1995)(citation omitted). "If he has not, the burden shifts to the respondent to rebut this conclusion, demonstrate an inability to comply, or present other relevant defenses." *Id.* "Willfulness is not an element of civil contempt." *Petroleos Mexicanos v. Crawford Enters.,* 826 F.2d 392, 401 (5th Cir. 1987). "In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence." *Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961 (5th Cir. 1995).

In this case, having considered the filings, the Court's Orders, as well as the testimony and evidence received at the hearing, the Court finds that Plaintiff has established by clear and convincing evidence that Defendant Okorie should be held in civil contempt of the Court's Orders. *See LeGrand*, 43 F.3d at 170. First, there was a November 21, 2024, Court order in effect awarding possession of the building to Plaintiff. *See* Order [148], J. [149]. Second, this Order [148] was followed by a series of Orders, starting on December 4, 2024, giving Plaintiff a deadline of December 18, 2024, to vacate 3700 Hardy Street. *See* Orders [171], [175], [181], [184]; *see also*

Order [168](entered 12/3/24; reiterating award of possession to Plaintiff; explaining contempt). The Fifth Circuit also denied his requests for stay in three separate Orders entered on December 4 and one on December 9.  Most importantly, the condition of 3700 Hardy Street on the morning of December 18, 2024, demonstrates that Okorie made no effort to comply with the Court's Orders. Finally, in an effort to provide full disclosure about the current condition of 3700 Hardy Street, the parties, counsel, and the Court inspected the property on the morning of August 26, 2025, in conjunction with the motion hearings.  Tr. [278] at 59-63.

At this point, the burden shifts to Defendant Okorie to "demonstrate an inability to comply, or present other relevant defenses." *LeGrand*, 43 F.3d at 170.  In many instances, it is helpful to use a metaphor to paint the picture of the facts of a case to assist the reader and the appellate court in understanding what has transpired beyond the facts presented in a cold transcript of a hearing and the filings before the Court.  In this case, the Court is at a loss for metaphors that can adequately explain the testimony presented by Dr. Okorie as to why he chose not to obey the court's order. In short, Okorie's testimony was purposely evasive, revisionist, and rambling.  An examination of his testimony shows that he failed to meet his burden.

A starting point is the ownership of Inland Family.  Okorie testified both that he was the sole owner of Inland Family, yet he had no control over it.  Instead, he asserted that Inland Family's bankruptcy attorney[6] and a bankruptcy trustee appointed *after* the December 18, 2024 deadline to vacate the premises were responsible for making decisions about whether Inland should vacate. This is directly contrary to a filing signed by Okorie on December 13, in which he stated "Dr. Okorie maintains personal ownership of the property and acknowledges his responsibility to

---

[6] Defendant Okorie's bankruptcy counsel never made an appearance in this action. Furthermore, in a January 7, 2025, hearing before the Bankruptcy Court, his bankruptcy counsel admitted that he had not been actively involved in the bankruptcy case for two years.  *See* Tr. [275-2] at 6:9; 18:13-14 (Please note that the page numbers are those assigned by the CM/ECF system.).

vacate.  Inland Family Practice's status as a tenant does not shift compliance obligations for the premises to a trustee or any other party."  Resp. [182] at 4.  Moreover, contrary to his assertions, Okorie's ability to coordinate a move was not constrained by Inland Family's conversion from Chapter 11 to Chapter 7 bankruptcy on the eve of the December 18 deadline, as the conversion did not revive any automatic stay.  *See In re State Airlines, Inc.*, 873 F.2d 264, 268 (11th Cir. 1989)(finding that a conversion order does not trigger an automatic stay))

Finally, Okorie's testimony that he had no control over the property is directly contrary to testimony that he gave later in the hearing, upon questioning by the Court when he refused to answer questions presented by Plaintiff's counsel:

> The Court:  Did you have the ability to remove these items?
>
> Mr. Okorie:  Yes, Your Honor.  Yes, Your Honor.  I had the ability to remove it, yes, Your Honor.
>
> The Court: Nobody was keeping you from it, were they?
>
> Mr. Okorie: Nobody was keeping me from it – yes, Your Honor.  Nobody was keeping me from doing that up until they evicted us.

Tr. [280] at 38:16-24.

Even so, Defendant Okorie argued that he did not vacate the building because he had appeals pending and hoped that the Fifth Circuit would grant his requests for a stay.  Okorie maintained this argument despite his failure to file a supersedeas bond, which could have enabled a stay.  *See* Fed. R. Civ. P. 62.  Okorie also testified that his request for a stay was denied by the Fifth Circuit late on the evening of December 17, so he was unable to comply with the Court's order to vacate by December 18.  However, the timing of the Fifth Circuit's orders directly contradicts Okorie's testimony.  The Fifth Circuit issued three separate orders denying a stay of

this Court's proceedings on December 4, 2025, followed by another order on December 9, 2025. The Fifth Circuit did not enter any order related to Okorie's appeal of this case on December 17, 2024.

Likewise, Defendant Okorie's testimony that he did not have the financial resources to pay for a move are belied by the evidence. Okorie testified that he was funding Inland Family's operations at great personal sacrifice. However, Okorie admitted that he transferred $25,000 to his wife on November 22, 2024, the day after the Court awarded possession to University Mall; that he transferred $23,000 from Inland Family's debtor-in-possession account to his personal account between December 4 and 13; that Inland had receivables of $74,000 in the weeks leading up to the December 18 deadline; and that he had over $12,000 in a day-trader account during the time in question. Tr. [280] at 40-58; [271-14] (check); [271-16] at 40 (day-trader account statement). On January 10, 2025, he also signed and personally guaranteed a lease on another property so he could relocate the clinic. [271-13]. University Mall spent nearly $5,000 to remove a good portion of the personal property contents of the building. Based on the foregoing financial records, Defendant Okorie had the funds to facilitate a move by the deadline of December 18, 2024.

Moreover, Okorie's testimony that he did not have sufficient time to execute a move is not credible. He testified that the fourteen-day period that the Court gave him on December 4, 2024, was not enough time to coordinate a move. This fourteen-day period came nearly two weeks after the Court's November 21, 2024 judgment granting possession of the building to Plaintiffs, which was nearly eight months after the building was sold at auction on March 29, 2024. However, on January 7, 2025, he asserted in emails to the bankruptcy court and other interested parties that he could move the contents of the building within ten days. [271-10] (emails).

In sum, Defendant Okorie has failed to carry his burden to "demonstrate an inability to comply, or present other relevant defenses." *LeGrand*, 43 F.3d at 170. He admitted under oath that no one kept him from removing the items from the building in advance of the December 18, 2024, deadline. His efforts to obtain a stay were not only denied by this Court, but were also denied by the Fifth Circuit fourteen days and nine days – not mere hours – in advance of the December 18 deadline. The record demonstrates that he had the financial resources to facilitate a move. And, finally, his testimony and January 2025 emails demonstrate that he was willing to relocate the property within a ten-day period in January 2025, *see* [271-10], yet he willingly chose not to obey the Court's Orders giving him at least fourteen days to vacate in December 2024.

Thus, the Court has determined that Plaintiff University Mall has established by clear and convincing evidence that Defendant Okorie stands in civil contempt of the Court's Orders mandating that he vacate 3700 Hardy Street by December 18, 2024. Moreover, it has concluded that Defendant Okorie has failed to demonstrate an inability to comply or present other relevant defenses. Accordingly, the Court must determine the method for compensating Plaintiff University Mall for Defendant Okorie's failure to obey Court orders.

"When a party disobeys a court order, the court uses a civil contempt proceeding to either compel compliance or compensate a litigant for damages resulting from the noncompliance." *Rousseau v. 3 Eagles Aviation, Inc.*, 130 F. App'x 687, 690 (5th Cir. 2005). In this case, Defendant Okorie has demonstrated repeatedly that Court orders are inadequate to compel his compliance. Consequently, the Court must consider the best method to compensate Plaintiff University Mall for Defendant Okorie's non-compliance. "'Compensatory civil contempt reimburses the injured party for the . . . losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance.' An award of attorney's fees is an appropriate

sanction where a party incurs additional expenses as a result of the other party's noncompliance." *Id.*(citations omitted). However, the Supreme Court has cautioned district courts to use their discretion and judgment in crafting these awards by employing a "but-for causation standard." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109-110 (2017). On the other hand, district courts "'need not, and indeed should not, become green-eyeshade accountants (or whatever the contemporary equivalent is).'" *Id.* at 110 (citations omitted).

Utilizing the but-for causation standard, Plaintiff University Mall should not be in this unenviable position. If Defendant Okorie had simply obeyed the Court's Orders to vacate the building by December 18, 2024, 3700 Hardy Street could have been rented to a paying tenant, the parties would have gone their separate ways, and all of them could have foregone this painful litigation. But that did not happen.

Considering the Court's authority, it has several methods to compensate Plaintiff University Mall for Defendant Okorie's noncompliance with Court orders. Accordingly, the Court grants the following compensatory remedies:

1. Defendants' failure to vacate the building converted it into a storage unit for Defendants at Plaintiff's expense and caused Plaintiff to lose rental to a paying tenant. Accordingly, the Court hereby awards University Mall per diem rent from December 18, 2024, to the September 4, 2025, the date on which the Fifth Circuit's mandate issued affirming this Court's decision. *See* [276-1]. At the rate of $326.67 per day (as calculated by the Court's Orders at [148] and [171]), Defendant Okorie owes Plaintiff rental in the amount of $85,260.87 for that time period.

2. Defendant Okorie is required to reimburse Plaintiff for its out-of-pocket expenses related to moving the personal property from the building in the amount of $4,966.41,

as well as any related trailer storage expenses at the rate of $375 per month since March 12, 2025.  *See* [271-1] at 2.

3. Defendant Okorie is hereby ordered to pay in advance for a third-party contractor/mover (subject to Plaintiff's approval) to remove the abandoned remaining personal property, excluding fixtures, from 3700 Hardy Street and transfer the remaining items to a secure location at Defendant Okorie's expense, to be stored at Defendant Okorie's expense until such time as the judgment and the compensatory sanctions imposed by this Order are satisfied.  If Defendant Okorie chooses to sell the items, the proceeds shall be used first to satisfy the Judgment [149] and compensatory sanctions imposed by this Court and the Bankruptcy Court.

   Beginning on the date of this Order and until the remaining personal property is removed, the rental clock begins running anew such that Defendant Okorie will owe $326.27 rental for each day that his and/or Inland Family's personal property remains in 3700 Hardy Street.  Neither Defendant Okorie nor any of his employees will be allowed on the premises of 3700 Hardy Street during the moving process.

4. Defendant Okorie and other Defendants shall indemnify and hold harmless University Mall for any claims by lienholders or owners of the personal property abandoned in the building.

5. Defendant Okorie is ordered to pay University Mall's attorney's fees incurred pursuing this detainer action.  University Mall should submit an itemized bill to the Court in the form of a motion at its earliest convenience.

6. University Mall is entitled to all legal post-judgment remedies to available to it to satisfy the amounts due in this Order.

The Court hereby advises Defendant Okorie that, should he fail to pay these compensatory sanctions, he may be found in criminal contempt. *See International Union, United Mine Workers v. Bagwell*, 512 U.S. 821 (1994)("Due process traditionally requires that criminal laws provide prior notice both of the conduct to be prohibited and the sanction to be imposed.").

III.    MOTION FOR PRE-FILING INJUNCTION [258]

Plaintiff has also moved for a pre-filing injunction against Defendant Okorie, and the Court held a hearing on the matter. As an initial basis for the Motion [258], Plaintiff pointed to Okorie's threatened and ultimately filed lawsuit against Plaintiff, its Texas and Mississippi counsel, as well as their respective law firms, which sought to stop Plaintiff's garnishment of Okorie's Texas bank accounts. Plaintiff has also set out in great detail the many other ways that it asserts that Defendant Okorie has abused the court system. *See* [261]. In his Response [260] and Sur-reply [263], Defendant Okorie maintains, in general, that all of his filings have been made in good faith, on behalf of him and his patients. He argues, furthermore, that any burden on the Court has been created by Plaintiff's misconduct without any attempt to name or even allege what, if any, misconduct Plaintiff engaged in.

In *Baum v. Blue Moon Ventures, LLC*, the Fifth Circuit set out four factors a court must consider when determining whether it should impose a pre-filing injunction or modify an existing injunction to deter "vexatious" filings.

1.    A party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits;

2.    Whether the party had a good faith basis for pursuing the litigation, or simply intended to harass;

3.      The extent of the burden on the courts and other parties resulting

from the party's filings; and

4.      The adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures*, *LLC*, 513 F.3d 181, 189 (2008).  Defendant Okorie is no stranger to

this standard, as the Bankruptcy Court for the Southern District of Mississippi followed *Baum*

when it adjudicated him as a "vexatious litigant" in Bankruptcy Case No. 19-50379-KMS.  This

Court has upheld that determination, it has been affirmed by the Fifth Circuit, and the mandate has

issued.  *See* Order [11] at 9, Civil Action No. 2:24cv51-KS-MTP (quoting Bankruptcy Order

[1198] at 13-14, No. 19-50379-KMS), *aff'd*, *In re Okorie*, Order [88-2], Appeal No. 24-60469

(1/15/25)(docketed at [27] in Civil Action No. 2:24cv51-KS-MTP).

In the past several years, this Court has been weighed down by the burden of Okorie's

baseless *pro se* litigation stemming from his efforts to not only contest the foreclosure of 3700

Hardy Street but also contest his bankruptcy proceeding in Bankruptcy Case No. 19-50379-KMS.

As of May 2025, Okorie had filed thirteen (13) adversary proceedings related to his Bankruptcy

Case No. 19-50379-KMS.[7]  As of May 2025, he had filed thirty-one (31) separate civil actions in

this Court, all in his *pro se* capacity, and none of which (to date) has yielded a decision in his

favor.[8]  As described *supra*, Okorie has even filed baseless litigation in the Eastern District of

---

[7] For brevity's sake, the Court will list only the case numbers: AP 19-06032-KMS, AP 19-06040-KMS, AP 20-06015-KMS, AP 23-06017-KMS, AP 23-06019-KMS, AP 23-06020-KMS, AP 23-06021-KMS, AP 23-06022-KMS, AP 23-06023-KMS, AP 24-06017-KMS, AP 24-06018-KMS, AP 24-06027-KMS, AP 25-06008-KMS.

[8]  Again, for brevity's sake, the Court will list only the case numbers: 1:22-cv-00040-TBM-BWR; 2:23-cv-00100-TBM-RPM;  2:23-cv-00104-HSO-BWR;  2:23-cv-00172-HSO-BWR;  2:23-cv-00173-HSO-RPM;  2:23-cv-00190-TBM-RPM;  2:24-cv-00017-HSO-BWR;  2:24-cv-00020-HSO-BWR;  2:24-cv-00021-TBM-RPM;  2:24-cv-00030-KS-MTP;  2:24-cv-00035-TBM-RPM;  2:24-cv-00046-HSO-BWR;  2:24-cv-00047-KS-MTP;  2:24-cv-00050-TBM-RPM; 2:24-cv-00051-KS-MTP; 2:24-cv-00052-TBM-RPM; 2:24-cv-00061-HSO-BWR; 2:24-cv-00063-TBM-RPM; 2:24-cv-00089-TBM-RPM; 2:24-cv-00091-KS-MTP; 2:24-cv-00111-TBM-RPM; 2:24-cv-00141-MPM-RPM; 2:24-cv-00146-TBM-RPM;  2:24-cv-00181-HSO-BWR;  2:25-cv-00005-KS-MTP;  2:25-cv-00021-TBM-RPM;  2:25-cv-00042-TBM-RPM;  2:25-cv-00044-HSO-BWR;  2:25-cv-00045-HSO-BWR;  2:25-cv-00047-KS-MTP;  2:25-cv-00065-KS-MTP.  For another listing of Okorie's civil actions filed since receiving his Chapter 7 discharge in October 2021, *see* Brief [11] at p.8, n.1, *Okorie v. Priority One Bank, et al.*, Civil Action No. 2:25cv45-HSO-BWR (S.D. Miss. Jul. 15, 2025).  By that filing's count, Okorie has filed at least sixty (60) federal court lawsuits, adversary complaints,

Texas related to this action.[9]  As of the date of this Order, Okorie has filed eighteen (18) separate appeals of this Court's decisions to the Fifth Circuit.[10]  The Fifth Circuit has denied relief to him in sixteen of those appeals and has issued multiple sanctions warnings, as described *supra*.[11]  Dr. Okorie's baseless filings have even reached the Supreme Court, which has denied his appeals.[12]  And, as described *supra* in Note 2, Defendant Okorie has filed parallel actions in the courts of the State of Mississippi.

As illustrated by the foregoing listing of cases, and as set forth in Plaintiff's briefing, *see* [261], Defendant Okorie has failed to demonstrate a good faith basis for litigation.  Put another way, his conduct amounts to bad faith.  *See Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 816 (5th Cir. 2017); *see also Okorie v. Citizens Bank*, Civil Action No. 2:24cv35-TBM-RPM, 743 F. Supp. 3d 807, 812 (S.D. Miss. 2024)(noting the Court's power to reference and compile cases pending before the District Court).  Defendant Okorie's litigation is crafted to harass opposing litigants.  He also continues to ignore court rulings, as demonstrated by his failure to obey the rulings of the Court in this case and his failure to pay sanctions imposed by the Bankruptcy Court and affirmed by this Court.  *See Okorie v. Lentz*, Civil Action No. 2:24cv51-KS-MTP, 2024 WL 4186937 (S.D. Miss. Sept. 9, 2024), *aff'd*, *In re Okorie*, No. 24-60499, 2024 WL 4867073 (5th Cir. Nov. 22, 2024).  And Okorie continues to misrepresent those rulings in his filings and in hearings before the Court.  Okorie generates an over-stretched firehose of motions and duplicative

---

[9] or appeals all arising from and/or related to his bankruptcy case.

[9] *See Okorie v. University Mall, LLC, et al.*, Civil Action No. 4:25-cv-817-SDJ-AGD (E.D. Tex.)(dismissed on 8/25/25).

[10] *See* Appeal Nos. 23-60505; 24-60166; 24-60254; 24-60255; 24-60273; 24-60345; 24-60376; 24-60377; 24-60442; 24-60469; 24-60472; 24-60605; 24-60613; 25-60047; 25-60048; 25-60185; 25-60431; 25-60490.

[11] The two remaining appeals are still in the briefing stage.  *See* Appeal Nos. 25-60431 and 25-60490.

[12] *See* Supreme Court Appeal Nos. 24A562 (denying application for stay in this action); 24A998 (granting extension of time to file petition for writ of certiorari in Fifth Circuit Appeal No. 24-60469); 25M5 (denying Okorie's Motion for out of time petition for writ of certiorari in Fifth Circuit Appeal No. 24-60469).

actions across a wide spectrum of courts and jurisdictions.  He makes duplicative filings in cases before the Court, and he even produces filings that do not relate to this action.  *See, e.g.* Notice [286] (filed 10/20/25).  On multiple occasions, he has asked other state and federal courts to stay this action.  *See, e.g.* Motion [72] at 3, *Okorie v. Foxworth*, Civil Action No. 2:24cv35-TBM-RPM (S.D. Miss. Nov. 25, 2024); *Okorie v. University Mall, LLC, et al.*, Civil Action No. 4:25-cv-817-SDJ-AGD (E.D. Tex.)(dismissed on 8/25/25); Order #255090, *Okorie v. Citizens Bank*, No. 2024-CP-00462 (Miss. Dec. 16, 2024); *see also* [261-2] (Motion, *Okorie v. Citizens Bank*, Civil Action No. 24-cv-141-SM, Nov. 4, 2024, Chancery Court of Forrest County, Miss.).  Even the Fifth Circuit's sanctions warnings have not curbed his enthusiasm for litigation.

Okorie's conduct could be interpreted as an effort to interfere with the attorney/client relationship of parties opposing him in litigation, thus depriving parties of their right to counsel, as well as interfere with the functions of the Court.  Okorie has developed a pattern of suing attorneys of opposing parties, the judges assigned to his cases,[13] and bankruptcy trustees in at least fourteen other cases when he does not like the rulings, and he has moved to disqualify counsel in at least thirteen actions.  *See* [261] at 8-10.  He sued Plaintiff's Mississippi counsel, Texas counsel, and their respective law firms when Plaintiff attempted to garnish his bank accounts pursuant to this Court's judgment.  *See Okorie v. University Mall, LLC, et al.*, Civil Action No. 4:25-cv-817-SDJ-AGD (E.D. Tex.)(dismissed on 8/25/25).  He also moved to disqualify Plaintiff's counsel in this case, which the Court denied after a hearing.  *See* Text Only Order 9/24/24; Tr. [190] at 60-62 (Okorie's testimony stating he sued Plaintiff's counsel for "meddling" in his foreclosure and eviction; asserting that Plaintiff's counsel should be disqualified).

---

[13] Defendant Okorie sued the undersigned in *Okorie v. Starrett*, Civil Action No. 2:24cv141-MPM-RP.  Final judgment of dismissal with prejudice was entered on March 12, 2025.  There has been no appeal.

Moreover, the speed at which he generates filings reveals, nor does he dispute, that he uses artificial intelligence to generate his pleadings.  *See* Sur-reply [263] at 3.  While he has testified that he personally reviews his filings for citation accuracy, the filings themselves say otherwise. In filings in this action, the Court has found multiple instances of artificial intelligence "hallucinated" citations of cases and rulings that simply do not exist.  *See, e.g.,* Motion [214] at 2-5; Resp. [223] at 3-6; Sur-reply [263] at 3 (citing non-existent case *United States v. Morgan*, 2017 WL 1387302, at *3 (N.D. Cal. Apr. 18, 2017)).  Okorie also attributes non-existent rulings and quotes to existing cases.  *See, e.g.*, Resp. [260] at 4 (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)).  Moreover, this Court has admonished and/or sanctioned him in other civil actions for "hallucinated" citations and inappropriate case citations.  *See, e.g.,* Order [72] at 3 n.1, *Okorie v. Poncho*, Civil Action No. 2:24cv52-TBM-RPM (S.D. Miss. Aug. 21, 2025); Order [1198] at 9-11, *In re Okorie,* No. 19-50379-KMS (Bankr. S.D. Miss. Mar. 25, 2024), *aff'd*, *Okorie v. Lentz*, No. 2:24cv51-KS-MTP, 2024 WL 4186937, at *1 (S.D. Miss. Sept. 9, 2024), *aff'd sub nom. Matter of Okorie*, Appeal No. 24-60469, 2024 WL 4867073 (5th Cir. Nov. 22, 2024).

Given Okorie's history of litigation before this Court, the Court "has reason to believe that [Okorie] will continue to file lawsuits in an effort to receive the result that he believes he is entitled, but which the law does not support."  *Nix v. Major League Baseball*, No. H-21-4180, 2022 WL 2118986, at *21 (S.D. Tex. June 13, 2022).  Likewise, this "future litigation 'would be repetitive, vexatious, previously resolved, and meritless.'"  *Id.* (citation omitted).  As the Court found in *Nix*, an "injunction is necessary to prevent or respond to such filings."  *Id.*  This area of the law is well-settled and long-standing.  *See Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1115 (5th Cir. 1986)(holding that a district court may impose a pre-filing injunction, which would bar a litigant from filing any additional actions without first obtaining leave from the district court, to deter

vexatious filings). An injunction should be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). The Court is also mindful that "[t]he right of access to the courts is neither absolute nor unconditional and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Baum*, 513 F.3d at 193 (citation omitted).

Along those lines, the Court finds that the Bankruptcy Court provided a model for a pre-filing injunction that has been upheld on appeal. *See Matter of Okorie*, Appeal No. 24-60469, 2024 WL 4867073 (5th Cir. Nov. 22, 2024). Accordingly, the Court hereby orders the following:

Defendant Okorie is hereby enjoined from filing any future lawsuits seeking relief related to or stemming from his bankruptcy actions, this case, and any other case he has filed (both pending and/or dismissed) in the Southern District of Mississippi as of the date of this Order without first requesting and obtaining leave of Court. Likewise, Defendant Okorie is enjoined from filing any future pleadings, motions, or other documents seeking relief from this Court in this case or in any case involving University Mall and/or its counsel without first requesting and obtaining leave of Court. Any motion for leave must:

1. Not exceed two pages,

2. Attach the proposed filing,

3. Explain why the proposed filing is not frivolous,

4. Explain why the proposed filing is not an attack on any previous order entered by the Court in this case or any related proceeding, and

5. Shall certify, by affidavit or under penalty of perjury, that the proposed filing raises a new issue that has not already been rejected by the Court or is not currently pending before the Court.

In addition, Defendant Okorie is enjoined from filing a motion for leave to file relief related to or stemming from his bankruptcy actions, this case, and any other case he has filed (both pending and/or dismissed) in the Southern District of Mississippi as of the date of this Order *without first purging himself of the contempt sanctions imposed by the Bankruptcy Court in No. 19-50379-KMS and the sanctions imposed by this Order.* In other words, until Defendant Okorie pays his sanctions, he cannot file a motion for leave to file another action or, for that matter, any other new action based on the aforementioned parameters. The same injunction applies to cases involving University Mall and/or its counsel; that is, until Defendant Okorie pays his sanctions, he cannot file a motion for leave to file future pleadings, motions, or other documents seeking relief from this Court in this case or in any case involving University Mall and/or its counsel.

The Court next turns to the scope of the injunction. "The All Writs Act provides that federal courts may 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002)(citing 28 U.S.C. § 1651(a)). Furthermore, "[a]lthough the Anti-Injunction Act is an absolute bar to any federal court action that has the effect of staying a pending state court proceeding unless the action falls within a designated exception, it does not preclude injunctions against a [litigant's] filing of *prospective* state court actions." *Id.* (citing 28 U.S.C. § 2283)(other citations omitted).

The Court has carefully considered the Plaintiff's request for a pre-filing injunction that extends throughout the Fifth Circuit. During the hearing on this matter, the Court expressed reservations about ordering such a wide-ranging pre-filing injunction. However, upon further reflection, the Court finds that one is justified under these circumstances. Defendant Okorie has demonstrated that he is willing and able to take his style of litigation on the road to the federal and

state courts of Texas.  And he has repeatedly filed duplicative actions in the state and federal courts of Mississippi.

The Fifth Circuit has "upheld an order enjoining a litigant from bringing any future litigation on any claim arising from a particular fact situation, where the litigant was abusing the court system by harassing his opponents."  *Id.* (citing *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980)).  And the *Harrelson* order applied to both federal and state lawsuits.  *Id.* Accordingly, the Court finds that it is appropriate for this pre-filing injunction to apply to federal courts within the Fifth Circuit and to state courts in the States of Mississippi and Texas.

Thus, at this time, the Court hereby enjoins Defendant Okorie from filing any new cases throughout the United States District Courts of the Fifth Circuit (which encompasses Mississippi, Louisiana, and Texas), as well as the State Courts of Mississippi and Texas seeking relief related to or stemming from his bankruptcy actions, this case, and any other case he has filed (both pending and/or dismissed) in the Southern District of Mississippi as of the date of this Order without first requesting and obtaining leave of Court from the Chief Judge of the appropriate court or his/her delegee.  Moreover, Defendant Okorie is enjoined from filing a motion for leave to file relief in the aforementioned federal and state courts related to or stemming from his bankruptcy actions, this case, and any other case he has filed (both pending and/or dismissed) in the Southern District of Mississippi as of the date of this Order *without first purging himself of the contempt sanctions imposed by the Bankruptcy Court in No. 19-50379-KMS and the sanctions imposed by this Order.* The Court also orders Defendant Okorie to file a copy of this Order with any filing that he makes in any other court.

IV.    <u>CONCLUSION</u>

For the reasons discussed above, the Court hereby grants Plaintiff University Mall's Motion for Contempt [240] and Motion for Pre-filing Injunction [258].  Defendant Okorie's Motion to Correct Minute Entry [275] is granted in part and denied in all other respects.[14]

SO ORDERED AND ADJUDGED, this 22nd day of October, 2025.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE

---

[14] As stated *supra* at n.1, Defendant Okorie's Motion [275] is granted only to the extent that the Court has considered Defendant Okorie's exhibits referenced in the Motion [275].  In all other respects, the Motion is denied.